FILED
2011 Oct-27  PM 05:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JAMES MCARTHUR HILL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **7:11-cv-486-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff James McArthur Hill ("Plaintiff") brings this action pursuant to

Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking

review of the final adverse decision of the Commissioner of the Social Security

Administration ("SSA").  This court finds that the Administrative Law Judge's

("ALJ") decision - which has become the decision of the Commissioner - is

supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying

benefits.

### I. Procedural History

Plaintiff filed his application for Title II disability insurance benefits and

Tile XVI Supplemental Security Insurance ("SSI") on April 17, 2007, alleging a

disability onset date of October 2, 2006, from major depressive disorder and

personality disorder.  (R. 38, 70, 74).  After the denial of his applications on July

12, 2007, (R. 40), Plaintiff requested a hearing before the ALJ on August 11,

2007, (R. 51), which occurred almost two years later, on April 15, 2009, (R. 22).

At the time of the hearing, Plaintiff was 38 years old and had an eleventh grade

education.  (R. 70, 80).  His past relevant work included heavy and unskilled work

as a lumber stacker.  (R. 75).  Plaintiff has not engaged in substantial gainful

activity since October 2, 2006.  (R. 74).

Four months after the hearing, on August 17, 2009, the ALJ denied

Plaintiff's claims.  (R. 9-21).  The denial became the final decision of the

Commissioner when the Appeals Council refused to grant review on January 21,

2011.  (R. 1-3).  That same day, the SSA received from Plaintiff a psychological

evaluation Dr. John Goff completed on December 9, 2010.  Docs. 9-2 and 9-3.

However, the SSA rejected the evaluation:  "the new evidence submitted to the

Appeals Council is dated December 9, 2010, well over a year after the [ALJ's]

decision.  Because this evidence does not apply to the period at issue, we find it

does not qualify as new and material evidence for the purposes of reopening the

decision."  Doc. 9-2.  Plaintiff then filed this action for judicial review pursuant to

section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

> (1)    whether the claimant is currently unemployed;
>
> (2)    whether the claimant has a severe impairment;
>
> (3)    whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

Performing the five step analysis, initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 2, 2006, his alleged onset date, and therefore met Step One.  (R. 14).  The ALJ acknowledged that Plaintiff's combination of severe impairments of major depressive disorder, personality disorder, and decreased intellect met Step Two.  *Id*.  Having determined that Plaintiff met Step Two, the ALJ proceeded to the next step and found that Plaintiff did not satisfy Step Three since his impairments or combination of impairments neither met nor equaled the requirements for Listings

12.02 (organic mental disorders), 12.03 (schizophrenic paranoid and other

psychotic disorders), 12.04 (affective disorders), 12.08 (personality disorders), and

12.09 (substance addiction disorders).  (R. 14-15).  Although he answered Step

Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the

ALJ proceeded to Step Four where he determined that Plaintiff

> had the [RFC] to perform a full range of work at all exertional levels
> but with the following nonexertional limitations: Mentally, the
> claimant is able to understand, remember, and carry out simple
> instructions but will have greater difficulty with more detailed and
> more complex instructions.  The claimant is able to sustain attention
> and concentration for about 2 hour periods at a time to complete a
> normal workday at an acceptable pace and schedule.  The claimant
> may be expected to miss 1 or 2 days of work per month due to
> exacerbation of psychiatric symptoms.  The claimant is able to
> appropriately manage at least casual and informal contact with the
> general public, with co-workers or supervisors.  Proximity to others
> should not be intensive or prolonged, as the claimant may have
> difficulty interacting effectively with others when taxed or stressed.
> He will likely be able to accept and utilize supervision, and respond
> to appropriate levels of feedback and constructive instructions.  The
> claimant is able to respond to at least simple and infrequent changes
> in work routine.  This [RFC] reflects the effects of alcohol and drug
> abuse.  Segregating out the effects of alcohol and drug abuse, the
> [RFC] remains the same as above, except the claimant is not expected
> to miss 1 or 2 days per month.

(R. 16).  Further, the ALJ determined that Plaintiff

> is capable of performing past relevant work as a Lumber Stacker.
> This work does not require the performance of work-related activities
> precluded by the claimant's physical/mental [RFC].  Even if the
> position of lumbar [sic] stacker is not past relevant work, the same

> result follows, as reflected in the testimony of the vocational expert.
> That is, a significant number of alternative jobs fall within the
> claimant's profile and designated RFCA.

(R. 19).  Because the ALJ answered Step Four in the negative, again, consistent

with the law, the ALJ determined that Plaintiff is not disabled.  *Id.*; *see also*

*McDaniel*, 800 F.2d at 1030 ("A negative answer to any question other than Step

Three, leads to a determination of 'not disabled.'").  The ALJ found also that

Plaintiff's "substance abuse disorder is a contributing factor material to a

determination of disability pursuant to 20 CFR 416.935.  In accordance with

Public Law 104.121, the [Plaintiff] cannot be considered to be 'disabled' and is

not eligible for [SSI]."  (R. 21).

## V.  Analysis

The court turns now to Plaintiff's contentions.  Specifically, Plaintiff

contends that the ALJ erred when he purportedly failed to develop a full and fair

record during the hearing in violation of Plaintiff's due process rights, doc. 9 at 7,

and when he determined that Plaintiff's drug and alcohol abuse was a contributing

factor material to the disability determination, *id*. at 17.  Lastly, Plaintiff contends

that a sentence six remand is warranted because the Appeals Council refused to

consider the new evidence he submitted from Dr. John Goff on December 9, 2010.

*Id*. at 13.  The court has reviewed each of Plaintiff's contentions and, for the

reasons stated below, disagrees that the ALJ committed reversible error and that a remand is warranted.

A.   *The ALJ developed a full and fair record and did not violate Plaintiff's due process rights.*

First, Plaintiff contends that the ALJ erred by failing to develop a full and fair record because the "notice of right to counsel given to [Plaintiff] was woefully inadequate." Doc. 9 at 10. The record belies this contention. Specifically, although Plaintiff is illiterate, at all relevant times, the hearing notices informed Plaintiff that he had a right to counsel, in compliance with 20 C.F.R. § 404.916(b). Indeed, on August 11, 2007, two years prior to the hearing, Plaintiff executed hearing request forms that stated:

> I understand I have a right to be represented and that if I need representation, the Social Security office or Hearing office can give me a list of legal referral and service organizations to assist me in locating a representative.

> * * * *

> I do not have a representative.

> I understand that I have a right to be represented and that if I need representation, the Social Security office or hearing office can give me a list of legal referral and service organizations to assist me in locating a representative.

(R. 52, 53). Moreover, two years later, on February 24, 2009, Plaintiff

acknowledged receipt of the Notice of Hearing that stated, "You May Choose To Have A Person Represent You:  If you want to have a representative, please get one right away. You should show this notice to anyone you may appoint.  You or that person should also call this office to give us his or her name, address, and telephone number."  (R. 57, 60).

Needless to say, the record establishes that the notices, in fact,  properly informed Plaintiff of his right to have representation and how to obtain counsel. Therefore, contrary to Plaintiff's contention, the notices are not inadequate nor do they violate Plaintiff's due process rights.

Next, Plaintiff argues that the ALJ failed to develop a full and fair record "in light of the fact that [Plaintiff] did not knowingly or intelligently waive his right to representation."  Doc. 9 at 10.  Apparently, Plaintiff made no attempts to obtain counsel or had no success in obtaining counsel prior to the hearing and seeks to blame the failure to obtain counsel on the SSA.  In that regard, the court notes that at the April 15, 2009, hearing, the following exchange occurred between Plaintiff and the ALJ:

ALJ: Mr. Hill, do you remember receiving a letter about the hearing?

Plaintiff: Yeah.  I have it right here.

ALJ: You talked about having an attorney represent you.  Have you

thought about that?

    Plaintiff: Yeah.  I tried to find one but I talked to somebody at the
Social Security Office, and they told me I wouldn't need one.

(R. 24).  Presumably, this statement is the basis of Plaintiff's contention that the

ALJ or SSA bears fault for his decision not to retain counsel.  If the record

consisted solely of this exchange, the court would agree with Plaintiff.  However,

there is more.  Specifically, after Plaintiff made this statement, the ALJ responded:

    ALJ: Well, that's bad advice, Mr. Hill, and I shouldn't say bad
advice.  Everyone has a right to an attorney.  You don't have to have
an attorney.  Now some people come into these hearing rooms with
no attorney, and they win because their case is so strong, and some
people come in the hearing room with a good attorney and lose
because the case is so weak.  But many, many people fall between
those two extremes when an attorney or another representative might
make a difference.  So you shouldn't rely on any advice you have
been given by the District Office about whether you need an attorney
or not.  You should make your own decision.  It [sic] may have been
turned down by one private attorney, but there are lots of other
attorneys out there in the Tuscaloosa area who do these types of
cases, and <u>I'll happily postpone the hearing if you would like to go
talk to somebody.  It is your decision, and whatever you wish to do</u>.

    Plaintiff: <u>I'll go ahead</u>.

(R. 24-25) (emphasis added).

    Rather than being at fault for Plaintiff's failure to retain counsel before the

hearing, the record is unequivocal that the ALJ informed Plaintiff in clear and

concise terms that Plaintiff had a right to counsel and, in fact, the ALJ offered to

postpone the hearing.  It was Plaintiff who decided to go forward and did so again

when the ALJ gave him another opportunity to postpone the hearing:

ALJ: Okay.  Do you want a chance to look at the medical records, and other paperwork that you filled out about your claim?

Plaintiff: Yes sir.

ALJ: All right.

Plaintiff: I don't even know what it is.

ALJ: I'm sorry.  Mr. Hill, what did you say?

Plaintiff: It probably won't do me no good to look at them no way.  I can't read.

ALJ: Its up to you and whatever you wish to do.  <u>The fact that you can't read is maybe another reason why you ought to have someone represent you, but that is your decision</u>.

Plaintiff: Yeah.

ALJ: Well, do you want me to send the information to Tuscaloosa so some other family member, or a friend can read it for you?

Plaintiff: Yeah.  Well, my brother out there in the car.

ALJ: Well, it won't get there today.  I mean, it will get there for another day, and then Social Security will contact you to come in and look at the record.  Is that what you want to do, or whatever you want to do, Mr. Hill, you just let me know.  <u>You can have your brother look at the records at some later date, and we can do that</u>.

Plaintiff: <u>No.  Yeah.  Let's just go ahead with it</u>.

(R. 24-26) (emphasis added).

This court finds that the ALJ committed no error in conducting the hearing in the absence of counsel for several reasons.  First, although Plaintiff testified that someone at the SSA advised him that he did not need counsel, the ALJ encouraged Plaintiff to disregard that advise, twice advised him of his right to counsel, and offered to postpone the hearing in order for Plaintiff to attempt to secure counsel. Significantly, Plaintiff declined and said, "I'll go ahead," (R. 25), and "Let's just go ahead with it," (R. 26).  Second, the ALJ scheduled the hearing almost two years after Plaintiff requested it, meaning that Plaintiff had ample time to obtain counsel if he wanted to do so.  That Plaintiff is now represented by counsel suggests that Plaintiff could have easily retained counsel prior to the hearing if he wanted to do so.  Lastly, the record evidence overwhelmingly and substantially supports the ALJ's non-disability finding.  No counsel, skilled or unskilled, could overcome the evidentiary record here – i.e., Plaintiff's failure to demonstrate that he cannot engage in any substantial gainful activity.  In other words, the presence of counsel would not have mattered.  Therefore, to the extent the ALJ erred by granting Plaintiff's request to proceed with the hearing  – and this court finds that the ALJ did not err – any such error was harmless.

Lastly, Plaintiff argues that the ALJ failed to develop a full and fair record

because "[w]hen [Plaintiff] declared that he had hearing problems, was illiterate, that he suffered from hallucinations [ ], and had trouble concentrating [ ], the ALJ failed to question [Plaintiff] regarding these areas, only questioning him with regards to his depression and his back."  Doc. 9 at 12.  This argument is also unpersuasive for several reasons.  First, without any supporting objective medical evidence, neither this court nor the ALJ can rely on subjective complaints to make a disability determination.  *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i).  Second, diminished hearing and illiteracy, without more, are insufficient to render a person disabled.  Indeed, regarding Plaintiff's alleged hearing problem, the ALJ correctly noted that "the medical records of evidence show no history of deafness."  (R. 18).  Third, Plaintiff's disability applications alleged a disability due to depression, personality disorder, and headaches, (R. 38, 74), which, absent some reasonable nexus established by the record, show no relation to a hearing impairment or illiteracy.  Finally, the ALJ made an adequate inquiry into Plaintiff's hallucinations when he questioned Plaintiff's nicotine, alcohol, and drug usage, to which Plaintiff responded that he drinks twenty-four to thirty beers and two or three bottles of gin per week, (R. 28-29), smokes marijuana "about twice per week," *id.*, and smokes cigarettes, *id*.  Significantly, the ALJ's questioning in this regard is buttressed by examining clinical psychologist Dr.

Jerry Gragg's ("Dr. Gragg") evaluation that noted that "[g]iven [Plaintiff's] extensive usage of drugs, one must wonder to what degree the psychotic features he reported [ ] were secondary to drug usage and not truly reflective of 'Psychotic Disorder NOS.'"[1] (R. 159).  Further, Dr. Samuel Popkin completed a psychiatric review technique and noted that Plaintiff's "psychosis NOS (CE panelist opines this is drug-related." (R. 169).  As is evident, the ALJ's questions regarding Plaintiff's subjective complaints were appropriate and substantially supported by the record.  Therefore, contrary to Plaintiff's contention, the ALJ in fact developed a full and fair record.

## B.  The Appeals Council's decision does not warrant a sentence six remand.

Next, Plaintiff contends that remand is warranted because Dr. John Goff's psychological evaluation amounted to "new evidence, material to [Plaintiff's] claim, and there is good cause for not submitting it" prior to the hearing.  Doc. 9 at 15.  Specifically, Plaintiff contends that this court should reverse the SSA's determination that Dr. Goff's report did not apply to the period at issue because the report noted that Plaintiff has "suffered from mental illness and mild mental retardation since he was a child." Doc. 9 at 15-16.  This argument is unpersuasive also, in part, because this court reviews "the decision of the ALJ as to whether

---

[1]Not otherwise specified.

[Plaintiff] was entitled to benefits during a specific period of time, which period is necessarily <u>prior</u> to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (emphasis added). In other words, medical opinions rendered <u>after</u> the ALJ issued his or her ruling are "simply not probative" to the issues the ALJ reviewed. *Id*. Here, the ALJ issued his opinion on August 17, 2009, (R. 21), and Dr. Goff issued his psychological evaluation sixteen months later on December 9, 2010, doc. 9-3 at 2. Therefore, Dr. Goff's evaluation is not probative for the issues the ALJ reviewed.

Alternatively, the court can review new evidence not submitted at the administrative level only to determine if remand is warranted pursuant to sentence six of 42 U.S.C. § 405(g), which provides the "sole means for a district court to remand to the Commissioner to consider <u>new</u> evidence presented for the first time in the district court." *Ingram v. Astrue*, 496 F.3d 1253, 1267 (11th Cir. 2007) (emphasis added). Although not a part of the certified record, Dr. Goff's evaluation is not <u>new</u> evidence presented for the first time in this court because the SSA evaluated it and rejected it. Doc. 9-2 at 2. Accordingly, a sentence six remand is not warranted here. In fact, it will serve no utility since the SSA will likely reach the same conclusion – i.e., that Dr. Goff's report "does not apply to the period of issue." *Id.*

C.     *The ALJ did not err in finding that Plaintiff's alcohol and substance abuse*
       *were a contributing factor material to the disability determination.*

Finally, Plaintiff challenges the ALJ's finding about his alcohol and drug

usage.  With respect to alcohol or drug use,

> Congress amended the Social Security Act to provide that a claimant
> "shall not be considered to be disabled for purposes of this subchapter
> if alcoholism or drug addiction would (but for this subparagraph) be a
> contributing factor material to the Commissioner's determination that
> the individual is disabled."  Pub. L. No. 104-121, § 105(a)(1), (b)(1),
> 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. §
> 423(d)(2)(C) (1997)). The regulations implementing § 423(d)(2)(C)
> provide that once the Commissioner determines a claimant to be
> disabled and finds medical evidence of drug addiction or alcoholism,
> the Commissioner then "must determine whether . . . drug addiction
> or alcoholism is a contributing factor material to the determination of
> disability." 20 C.F.R. § 404.1535. The key factor in determining
> whether drug addiction or alcoholism is a contributing factor material
> to the determination of a disability (the "materiality determination") is
> whether the claimant would still be found disabled if he stopped
> using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(1).

*Doughty v. Apfel*, 245 F.3d 1274, 1278 - 79 (11th Cir. 2001).  When making the

"materiality determination," "the claimant bears the burden of proving that his

alcoholism or drug addiction is not a contributing factor material to his disability

determination." *Id.* (citing *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999);

*Mittlestedt v. Apfel*, 204 F.3d 847 (8th Cir. 2000)).

Plaintiff argues that the ALJ failed to "probe into whether the cessation of

[Plaintiff's] drug and alcohol use would simultaneously cause his disability to

cease and gave no substantial evidence to support his determination."  Doc. 9 at

18.  This argument is unfounded and, in fact, was addressed by the ALJ:

> [A]lcohol and drugs are reducing [Plaintiff's] mental residual
> functional capacity.  His addictions were serious enough to cause the
> treating source to cease treatment of depression. . . . In this case, if the
> [Plaintiff] stopped abusing alcohol/drugs, his mental limitations
> would be reduced, perhaps to the non-severe level.  However, the
> level of reduction is not absolutely defined by the record or opinions.
> The [RFC] of the medical consultant includes alcohol and drug use
> effects.  That [RFC] is modified to show an ability to maintain
> attendance.  The moderate rating in this area by the medical
> consultant is only questionably consistent with the [RFC] indicating
> absences one or two days per month.  Again, attendance is likely to be
> better with cessation and that is reflected in Dr. Gregg's opinion. . . .
> The [Plaintiff's] substance abuse disorder is a contributing factor
> material to a determination of disability pursuant to 20 C.F.R. 416-
> 935.

(R. 17-18).  Critically, the ALJ's decision is supported by substantial evidence.

Again, Plaintiff testified that he drinks twenty-four to thirty beers and two or three

bottles of gin per week, and smokes marijuana.  (R. 29).  It is a reasonable

conclusion that Plaintiff's potential absenteeism would improve if he maintained

sobriety.  Moreover, regarding the affect of the drug and alcohol usage on

Plaintiff's psychosis, Dr. Gragg noted that Plaintiff "spends his time during the

day playing spades with friends, 'getting drunk and smoking' (marijuana)," and

"[g]iven his extensive usage of drugs, one must wonder to what degree the

psychotic features he reported at IRCMHC were secondary to drug usage and not

truly reflective of 'Psychotic Disorder." (R. 159). Furthermore, the medical

evidence confirms the drug usage. For example, on March 2, 2003, Plaintiff

attempted suicide and sought treatment at Golden Triangle Memorial Baptist

Hospital. (R. 123). He tested positive for marijuana, *id,* and the intake nurse

noted the smell of alcohol, (R. 124). Next, on June 4, 2007, Plaintiff attempted to

seek treatment at Indian Rivers Mental Health Center but, at Plaintiff's choice,

Plaintiff "wasn't seen by Doctor [ ]. [Plaintiff] stated he wasn't able to pass a drug

test. [Plaintiff] was told to call for appt. when able to pass drug screens." (R.

149). Lastly, again, Dr. Popkin's opined in his Psychiatric Review Technique that

Plaintiff's psychosis is drug related. (R. 169).

In short, Plaintiff has not presented any evidence to show that alcohol and

drug usage are not the cause or do not factor in his psychosis. Therefore, Plaintiff

has not met his burden of proving that his alcohol and drug usage are not

contributing factors material to his disability determination. In other words, the

ALJ's determination that Plaintiff's alcohol and drug usage are material

contributing factors to his condition is supported by substantial evidence,

including Plaintiff's own testimony of his drug and alcohol usage.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination

that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ

applied proper legal standards in reaching this determination.  The

Commissioner's final decision is, therefore, **AFFIRMED**.  A separate order in

accordance with this memorandum of decision will be entered.

Done the 27th day of October, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE